In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00176-CR
______________________________


LARRY EVERETT WHITE, JR., Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court No. 21,452


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â On June 6, 2003, Larry Everett White, Jr., waived his right to a jury trial and pled
guilty to five felony charges pending in Hunt County, Texas. This appeal concerns only
White's conviction for aggravated robbery in trial court cause number 21,452.


 The
indictment further alleged White had been previously, finally, and sequentially convicted
of two additional felony offenses. After the trial court admonished White about the
enhanced punishment range applicable in this case (twenty-five to ninety-nine years, or
life), White pled "true" to enhancement allegations. The trial court ordered a presentence
investigation report. On July 24, 2003, the trial court sentenced White to fifty years'
imprisonment. (There was not a negotiated plea agreement in this case). White timely
appealed his conviction and sentence to this Court. 
Â Â Â Â Â Â Â Â Â Â White appealed each of his five convictions separately, but the briefs in four of the
cases are substantively identical: White's counsel has reviewed the record and determined
there are no nonfrivolous issues that may be raised; he asks that we allow him to withdraw
as counsel pursuant to Anders v. California, 386 U.S. 738 (1967).
Â Â Â Â Â Â Â Â Â Â Since the briefs and arguments raised therein are identical in each appeal, for the
reasons stated in White v. State, No. 06-03-00173-CR, we likewise affirm the trial court's
judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Â 
Date Submitted:Â Â Â Â Â Â March 2, 2004
Date Decided:Â Â Â Â Â Â Â Â Â March 18, 2004

Do Not Publish



n phase) and
ultimately admitted that he could not complete the test because he was high on lacquer fumes,
suggesting to Hartman that the appellant had failed that field-sobriety test. (4) 

 Hartman then asked the appellant whether he believed it was safe for him to have been
driving; the appellant responded, "No, not really." (5) Based on the interviews and the appellant's
performance during the three standardized field-sobriety tests, Hartman concluded that the appellant
had lost the normal use of his mental and/or physical faculties, was impaired, and that he could not
safely operate a motor vehicle. The appellant was then arrested for DWI. At the jail, the appellant
refused to provide a blood specimen for purposes of testing the alcohol concentration. 

 On cross-examination, Hartman admitted that the appellant had not been slurring his words
on the night in question, that he had not stumbled or staggered as he walked, that his eyes were not
glassy or bloodshot, and that he had not been weaving his car all over the road. Our review of the
videotape of the traffic stop confirms most of these concessions by the trooper. Hartman also stated,
in response to defense counsel's questioning, that the officer observed the appellant "shaking, which
is an impairment of physical ability, due to him spraying paint lacquer." We, however, could not
independently observe the appellant shaking, but the quality of the videotape submitted with the
appellate record was not of the highest grade.

 On re-direct, Hartman told the jury that it is possible for someone who is high on something
such as lacquer paint to lose the normal use of his physical and/or mental faculties. He also told the
jury that not everyone he arrests for DWI has glassy or bloodshot eyes, slurred speech, or swerved
all over the roadways. 

 Steven Hodge, another state trooper with the DPS, testified about the relevant events he
witnessed on August 8, 2007. Hodge identified the appellant as being the person who was driving
the vehicle stopped by Hartman. Hodge's post-arrest inventory search of the appellant's vehicle
uncovered no evidence of alcoholic beverages. 

 Barbara Ferralez (Barbara) testified on her husband's behalf. Barbara married the appellant
the month following his arrest on the current charge. She told the jury that she had spoken on the
telephone with the appellant several times on the day in question; he never sounded as if he was
drunk or intoxicated. On cross-examination, she admitted that he occasionally comes home "high"
from lacquer and paint fumes. 

 Rayshell Mecaskey shared an apartment with the appellant at the time he was arrested in
connection with this case. (6) She told the jury that the appellant left the apartment on the date in
question around 8:45 p.m. to take "some soda and some crackers" to Barbara, who was sick. 
Mecaskey reported that the appellant did not appear to have been drinking or "high" on anything at
the time he left. His demeanor "was just like normal every day" and she did not believe the appellant
was "high" at the time. She did admit, however, that the appellant smelled strongly of paint or
lacquer; she even had to open several windows to help alleviate the pungent odor that he had brought
with him into their shared apartment. 

 After reviewing all the evidence using the appropriate appellate standards, we conclude the
jury had before it both factually and legally sufficient evidence to find that (1) the appellant,
(2)Â operated, (3) a motor vehicle, (4) in a public place, (5) while intoxicated. While it is true that
there was no evidence that the appellant was weaving all over the road, had bloodshot eyes, was
slurring his speech, or was stumbling over himself as he exited his vehicle on the night in question,
the jury nonetheless had before it other evidence upon which it could reasonably conclude the
appellant was guilty of the charged offense. This evidence included Hartman's testimony and the
videotape that corroborated many facts to which the officer testified. We cannot say this appellate
record leads us to conclude the jury's verdict was manifestly unjust, shocks the conscience, or
demonstrates bias. Accordingly, we overrule the appellant's first and second issues.

II. Admitting Evidence of the Appellant's Previous Felony DWI Conviction

 In his last point of error, the appellant contends the trial court erred by admitting, during the
guilt/innocence phase of trial, unsolicited evidence of his prior felony conviction for DWI. The State
responds by arguing that the appellant opened the door to such questioning. 

 We review a trial court's decision to admit or exclude extraneous-offense evidence under an
abuse of discretion standard. Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). "An
appellate court would misapply the appellate abuse of discretion standard of review by reversing a
trial court's admissibility decision solely because the appellate court disagreed with it." Id. An
appellate court may not conclude that the trial court abused its discretion unless the lower court's
ruling fell outside the zone of reasonable disagreement. Id.; see also Lopez v. State, 261 S.W.3d 103,
110 (Tex. App.--San Antonio 2008, pet. ref'd) (citing Montgomery v. State, 810 S.W.2d 372,
390-92 (Tex. Crim. App. 1991) (op. on reh'g)). Our Rules of Evidence prohibit the admission of
extraneous-offense evidence except under certain conditions:

 Evidence of other crimes, wrongs or acts is not admissible to prove the character of
a person in order to show action in conformity therewith. It may, however, be
admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident, provided
that upon timely request by the accused in a criminal case, reasonable notice is given
in advance of trial of intent to introduce in the State's case-in-chief such evidence
other than that arising in the same transaction.


Tex. R. Evid. 404(b). 

 The basis upon which the State wishes to solicit extraneous-offense evidence may not be
elicited through "prompting or maneuvering" by the State during its cross-examination of a witness;
instead, the proffered reason for the State's asserted need for the extraneous-offense evidence must
find its genesis in the direct examination testimony solicited by the defense. Wheeler v. State, 67
S.W.3d 879, 885 & n.14 (Tex. Crim. App. 2002) (referencing Shipman v. State, 604 S.W.2d 182,
185 (Tex. Crim. App. 1980); Mares v. State, 758 S.W.2d 932, 936 (Tex. App.--ElÂ Paso 1988, pet.
ref'd)).

 During guilt/innocence, and over the appellant's objection, the trial court permitted the State
to ask Barbara about her husband's prior felony DWI conviction. The trial court ruled that the
appellant had opened the door based on the defense counsel's earlier direct examination questions
of Barbara. The specific testimony upon which the trial court based its ruling was as follows:

 Q [By Defense Counsel] Can you tell the jury about [the appellant's]
drinking habits?

 

 A [Barbara Ferralez] It's very rare on occasion. Sometimes he'll have,
you know, a couple of beers or whatever, but, no, he does not drink.

 

 Q So do you keep any kind of liquor or beer around the house?

 

 A No, sir.

 

 Q To the best of your knowledge, when he was living with this other
person, right before he got married, did he keep beer or liquor around the house?

 

 A No, sir.


On cross-examination, after first obtaining permission from the trial court to go into the now-at-issue
extraneous-felony conviction evidence, the following exchange occurred:

 Q [By State] . . . According to you and your opinion and from personal
knowledge of the defendant, you said that he doesn't drink and get intoxicated?

 

 A [Barbara] No, sir.

 

 Q No? 

 Are you aware of the fact that on May 6th, 2003, he was sentenced to
five years in the Texas Department of Corrections for felony DWI?

 

 A Yes, sir.

 

 Q And it's still your opinion that he doesn't get intoxicated and drink?

 

 A No, sir.

 

 Q Let me ask you this: You said that he doesn't drink, yet you have
heard him intoxicated. How do you explain that?

 

 A I didn't say that he does not drink. I said he drinks on occasion. A
couple -- he might have a couple of beers on occasion after work but not to the point
of intoxication, no. (7) 

The State solicited similar testimony about the appellant's five-year felony DWI prison term during
cross-examination of Mecaskey after Mecaskey had earlier testified that she never saw the appellant
intoxicated and did not allow alcohol to be brought into their apartment. 

 The appellant's direct examination of his wife (and later his direct examination of Mecaskey)
left the jury with the impression that the appellant rarely drinks or gets intoxicated and that he is
rarely even around alcoholic beverages. The State's cross-examination was arguably relevant to
impeach and discredit the witnesses' characterizations of the appellant as someone who rarely drinks
and never gets intoxicated. "When a witness presents a picture that the defendant is not the type of
person to commit the charged offense, the prosecution may impeach that witness' testimony by
cross-examining the witness concerning similar extraneous offenses." Wheeler, 67 S.W.3d at 885
& n.1 (referencing McIlveen v. State, 559 S.W.2d 815, 822 (Tex. Crim. App. 1977)). While one
might reasonably characterize the State's cross-examination questions as "prompting and
maneuvering" designed to open the door to this extraneous felony, one might also fairly characterize
the appellant's direct examination of Barbara and Mecaskey as opening the door (even if ever so
slightly) to this line of questioning. Thus, under the applicable standard of review, we must conclude
no abuse of discretion has been shown. We overrule the appellant's third and final issue. (8)

III. Conclusion

 For the reasons stated, we conclude legally and factually sufficient evidence supports the trial
court's judgment. We similarly hold the record before us does not demonstrate the trial court abused
its discretion by admitting evidence of the appellant's prior conviction for felony DWI because,
arguably, the appellant's direct examination of both Barbara and Mecaskey opened the door to such
evidence. There being no other issues raised, we affirm the trial court's judgment.




 Bailey C. Moseley

 Justice



Date Submitted: February 13, 2009

Date Decided: February 25, 2009


Do Not Publish
1. Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court
by the Texas Supreme Court pursuant to its docket equalization efforts. See Tex. Gov't Code Ann.
§Â 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court
of Appeals and that of this Court on any relevant issue. See Tex. R. App. P. 41.3.
2. Hartman also told the jury that he previously worked as a deputy with the Smith County
Sheriff's Department for three and a half years. 
3. Hartman reported that Ferralez did not show any vertical nystagmus. Vertical gaze
nystagmus (VGN) testing results can suggest the presence of certain types or classes of illegal
narcotics, and/or the presence of an extremely high level of alcohol. See generally State v. Neesley,
239 S.W.3d 780, 788 & n.3 (Tex. Crim. App. 2007) (Keller, J., concurring) (observation of vertical
nystagmus later confirmed by laboratory testing showing defendant had ingested cocaine and
marihuana); Burkett v. State, 179 S.W.3d 18, 23 (Tex. App.--San Antonio 2005, no pet.) (police
officer used VGN testing to look for signs of excessive alcohol consumption).
4. The appellant was unable to perform the third test, described by the officer as the walk-and-turn test. 
5. When asked why he had not been using a respirator while spraying lacquer paint, the
appellant reportedly stated that he had run out of respirator filters and therefore had to spray the
lacquer without the use of protective equipment. An inventory search of the appellant's vehicle
revealed a new package of respirator filters on the front seat of the appellant's vehicle. 
6. Mecaskey and the appellant were not romantically involved. 
7. Later, the trial court denied the State's request to ask a different witness about the appellant's
prior robbery conviction. The trial court concluded that the witness's testimony had opened the door
to such evidence, but that court further held the probative value of such evidence was substantially
outweighed by its danger of unfair prejudice. See Tex. R. Evid. 403. The robbery conviction was,
therefore, properly excluded by the trial court from admission during guilt/innocence.
8. The appellant also makes the argument that the probative value of admitting the prior felony
DWI conviction was substantially outweighed by its danger of unfair prejudice, in violation of Rule
403(b) of the Texas Rules of Evidence. The record before us does not show the appellant raised this
issue in the trial court and thus the appellant has failed to preserve it for our review. Cf. Mendez v.
State, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004).